UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARILYN OAKIE, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF JACOB OAKIE, DECEASED, ON BEHALF OF THE ESTATE AND SURVIVORS,

CASE NO. 5:26-cv-00405-WFJ-PRL

PLAINTIFF,

v.

BILLY WOODS, SHERIFF OF MARION COUNTY, FLORIDA, IN HIS OFFICIAL CAPACITY, ET AL,

DEFENDANTS,
_________________________________________/

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER AND TO SEAL [DOC. 41]**

All Defendants to this action, pursuant to M. D. Fla. L. R. 3.01, hereby respond in opposition to Plaintiff's motion for entry of a protective order and to seal, [Doc. 41], with the following memorandum of law:

## I. Protective orders require good cause

Fed. R. Civ. P. 26(c)(1) authorizes the Court, "for good cause," to issue a protective order "specifying terms" for disclosure or discovery, but the party seeking the protective order must show good cause. In deciding whether good cause exists, courts consider "the severity and the likelihood of the perceived harm," "the precision with which the order is drawn," "the availability of a less

onerous alternative," and "the duration of the order," and they balance the interests of the parties and nonparties. In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987). Good cause "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." Metro. Life Ins. Co. v. Liebowitz, No. 2:20-CV-276-JES-MRM, 2021 WL 3520673, at *1 (M.D. Fla. July 2, 2021), citing United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

## II. Procedural posture

In her Amended Complaint, Plaintiff brings claims under § 1983 and Florida law arising from Marion County Jail (MCJ) inmate Jacob Oakie's death on July 28, 2024, from meningitis. [Doc. 25]. Plaintiff now moves for this Court's entry of her proposed protective order, see [Doc. 41-1], and to seal Jacobe Oakie's MCJ inmate medical documents, which were filed as an exhibit to the motion to dismiss Plaintiff's Amended Complaint filed by Defendants Billy Woods, Sheriff of Marion County, Florida, in his official capacity, Captain Brian Spivey, Officer N. Custodio, Deputy Gordon, and Deputy Iovino (together, the "Sheriff-Defendants"), see [Docs. 31, 31-1].

Plaintiff's counsel recently circulated the Plaintiff's proposed protective order now at bar. On October 16, 2026, after counsel for all Defendants

indicated opposition[1] to entry of the proposed order, Plaintiff served requests for production on Defendants Sheriff Woods and Heart of Florida Health Center, Inc., seeking, among over 200 enumerated items, all of the medical records, mortality reviews, and post-mortem records of all jail inmates who died in the Marion County Jail or after being transferred to an outside provider during the five years before Mr. Oakie's death; records of hospital transfers; and all grievances, complaints, appeals, and suits by all inmates about delayed or denied medical care. See [Docs. 41-2, 41-3]. Plaintiff argues that her proposed order is structured to comply with HIPAA and necessary "to obtain the non-party records required to prove Plaintiff's Monell claims." [Doc. 41].

## III. HIPAA's Privacy Rule

Relevant to the motion at bar, the Health Insurance Portability and Accountability Act of 1996 (HIPAA) allows a covered entity to disclose Protected Health Information (PHI) in a judicial proceeding in several ways. First, it may disclose PHI "[i]n response to an order of a court," but only "the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i). Second, it may disclose in response to a subpoena or discovery request not accompanied by a court order. In that case, however, the covered

[1] Plaintiff's instant motion fashions a bit of a strawman argument from the undersigned's initial inquiry about the circulated proposed protective order. Suffice it to say, counsel's justification for the proposed order did not (and the instant motion still does not) comport with the order's actual text, and the reasoning behind the Defendants' unwillingness to agree to it is set forth herein.

entity must receive satisfactory assurance that the requesting party made reasonable efforts either (A) to give the patient notice and an opportunity to object, or (B) to secure a qualified protective order. 45 C.F.R. § 164.512(e)(1)(ii)–(v). Of course, an individual, or the personal representative of that individual's estate (as in this case), may obtain the individual's PHI or authorize its release, as a matter of right without need of court order, for any number of reasons. See 45 C.F.R. § 164.502(a), (g).

A "qualified protective order" is an order or stipulation that (A) "[p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation" and (B) "[r]equires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation." 45 C.F.R. § 164.512(e)(1)(v).

## IV. Plaintiff's proposed protective order is inconsistent, imprecise, overly onerous, and plainly intended to strategically favor Plaintiff over the Defendants and non-parties

Plaintiff's proposed order may be recognized as having two parts: (1) Paragraphs 1-8 govern the PHI of Plaintiff,[2] and (2) Paragraph 9 governs PHI from non-parties. [Doc. 41-1]. All Defendants in this action oppose the proposed

[2] As written, Paragraphs 1-8 appear directed to **Plaintiff Marilyn Oakie's** PHI and state **nothing** with respect to **Jacob Oakie**, the actual decedent at issue in this case. Plaintiff's proposed order is captioned simply "Marilyn Oakie, Plaintiff" and that is what a records custodian presented with the protective order would see. [Doc. 41-1].

protective order sought by the Plaintiff. In doing so, they do not ask the Court to ignore HIPAA and its protections, nor do they necessarily oppose the eventual entry of a properly drawn qualified protective order under applicable regulations. See 45 C.F.R. § 164.512(e)(1)(v). Rather, they oppose the particular order Plaintiff now insists upon.

**a. Plaintiff's motion and proposed order attempt to disguise a sword as a shield.**

Plaintiff's proposed order does far more than govern how PHI is handled and protected. If approved, it would immediately undermine reasonable discovery constraints moving forward. Paragraph 9(f), for example, asserts that "all parties agree to the release of PHI for non-parties from any covered entity" identified anywhere in discovery. [Doc. 41-1, ¶ 9(f)]. No Defendant agrees to this. Nor should they be required to.

Nor should discovery be pre-judged in this aggressive fashion. What discovery the parties may be entitled to is a question governed by Fed. R. Civ. P. 26. With respect to Plaintiff's Monell claims, for example, it turns on, among other things, the time-period, comparability of prior incidents, and the privacy interests of non-parties who are not before the Court. This can be seen in Plaintiff's own cited authority, McCrimmon v. Centurion of Florida, LLC, No. 3:20-cv-36-BJD-LLL, 2022 U.S. Dist. LEXIS 21592 (M.D. Fla. Feb. 7, 2022). In McCrimmon, the court analyzed the relevance and proportionality of

subpoenas for mortality reviews and underlying records. It then found the requests overbroad to the extent they reached periods outside the medical contractor's tenure and required the plaintiffs to narrow them. Id. at *32-34. Plaintiff's proposed order would skirt Rule 26 completely. Practically speaking, Plaintiff's purported need for unconstrained access to non-party medical records is also belied by the numerous insufficiencies of her Amended Complaint, as set forth in the Defendants' respective motions to dismiss. Those insufficiencies include, *inter alia*, a complete absence of a causal connection between the Monell-based allegations and the care and treatment rendered to Jacob Oakie.

Instead of acknowledging the realities of her proposed order, Plaintiff's instant motion breezily represents that the proposed order "harms no one, because it does not restrict what either side may discover. Rather, it only governs how sensitive records are handled once produced in conformity with federal law." [Doc. 41, p. 5]. That misrepresents the order and hides the problem: Plaintiff's proposed order impermissibly expands discovery and it does so immediately. Tellingly, it does so only in Plaintiff's favor. Paragraph 8 provides that "[n]othing in this Order authorizes counsel for **Defendants** to obtain medical records or information through means other than formal discovery requests, subpoenas, depositions, pursuant to a patient authorization, or other lawful process." [Doc. 41-1, ¶ 8 (emphasis added)].

Reading Paragraphs 8, 9, and 9(f), in conjunction with Plaintiff's stated purpose of needing Monell-related discovery, Plaintiff should be understood to have conceded nothing, while simultaneously granting herself *carte blanche* to go on a fishing expedition for a functionally **limitless** population of patients and covered entities. See [Doc. 41-1, p. 9(f) ("The parties may seek and all parties agree to the release of PHI for nonparties from **any covered entity or entities** identified in **any disclosure or discovery response, medical record, inmate file, or testified to at any deposition, or identified by any other discovery tool.**" (emphasis added)).

**b. Beyond prejudicing the Defendants, the proposed order is fatally imprecise, inconsistent, and overly onerous on its face**

The limitless reach of the proposed order also disqualifies it under HIPPA, which requires such orders to be precise in describing the PHI it authorizes. See 45 C.F.R. § 164.512(e)(1) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . . [i]n response to an order of a court . . . , provided that the covered entity discloses only the protected health information expressly authorized by such order."). As just discussed, the PHI to be disclosed under the proposed order would be constrained only by a patient's or covered entity's **mere mention** in discovery, including in a "discovery tool" such as a subpoena. Nothing else. A provider's records custodian presented with a subpoena and

Plaintiff's proposed order in this case would be left to necessarily read the two together as compulsory process commanding release of quite literally the entirety of whatever patient's records are requested. [Doc. 41-1, ¶ 9(f)].

Also problematic is Paragraph 9's blanket provision that "[t]he parties and their attorneys . . . are hereby authorized to receive, subpoena and transmit" without concession to other controlling authorities. Pertinent in this case, Florida law specifically conditions disclosure of patient records in civil actions on a subpoena "and proper notice to the patient or the patient's legal representative by the party seeking such records." §§ 395.3025(4)(d); 456.057(7)(a)3, Fla. Stat. HIPAA does not preempt state privacy law that is "more stringent" than the Privacy Rule, and thus does not serve as a basis for issuance of a "protective order" that disregards those provisions. See 45 C.F.R. § 160.203(b).

Further, Plaintiff's proposed conditions and limitations on the handling of PHI are overly onerous and unnecessary. HIPAA qualified protective orders require only litigation-use and return-or-destroy limits. 45 C.F.R. § 164.512(e)(1)(v). Plaintiff's Proposed Order would designate every page of non-party PHI as "Attorneys' Eyes Only" and allow it to be viewed only by "counsel of record for the instant litigation, their paralegals and investigators, and retained expert witnesses." [Doc. 41-1 ¶¶ 9(b), 9(i)]. Read as written, these provisions would prohibit the Court and its staff, court reporters,

videographers, mediators, and copy and litigation-support vendors from reading any designated document. They would also prohibit the individual Defendants, the Sheriff's designated representatives, HOF's personnel, and the nurses, physicians, and others who created the records from reading them. A deposition of a nurse about a chart entry she wrote, or of a deputy about a medical-transport log, could not proceed on the designated document. Although paragraph 4 allows Plaintiff's PHI to be disclosed to "court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process[,]" Paragraph 9 contains no similar provision for non-party PHI.

The proposed protective order insisted upon by Plaintiff is not supported by good cause.

## V. Plaintiff's request to seal Jacob Oakie's MCJ inmate medical documents [Doc. 31-1] should be denied

The Eleventh Circuit has explained that "materials filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." Romero v. Drummond Co., 480 F.3d 1234, 1245 (11th Cir. 2007). Middle District of Florida Local Rule 1.11 provides that sealing a docketed item "used in the adjudication or other resolution of a claim or defense requires a reason sufficiently compelling to overcome the presumption of public access" and "is not authorized by a confidentiality

agreement, a protective order, a designation of confidentiality, or a stipulation." M. D. Fla. Loc. R. 1.11(a). The common law right of access may be overcome only by good cause, which requires balancing the right of access against the interest in confidentiality, considering among other things whether access would "harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." Romero, 480 F.3d at 1246.

Plaintiff now moves to seal docket item [31-1]. The Sheriff-Defendants filed [31-1] in support of their motion to dismiss Plaintiff's Amended Complaint against them, which is a substantive pre-trial motion, see [Doc. 30], and thus the common law right of access attaches. Romero, 480 F.3d at 1245. Docket item [31-1] consists of Jacob Oakie's Marion County Jail inmate medical documents spanning his jail intake on June 20, 2024, through his discharge to hospice on July 28, 2024. As explained at length in the Sheriff-Defendants' motion to dismiss – including through a page-long, single-spaced, end-to-end footnote of comparative citations between [31-1] and the various quotes from it in Plaintiff's Amended Complaint – the Amended Complaint incorporated by reference those inmate medical documents and they should be considered as set forth in the motion. [Doc. 30, pp. 6-7].

Plaintiff's motion to now seal Oakie's inmate medical documents offers little in the way of justification for it. [Doc. 41, p. 9]. This is almost certainly because good cause for sealing them does not exist. See Romero, 480 F.3d at 1246. By her own pleading, Plaintiff, as the personal representative of Jacob Oakie's Estate, placed a detailed, 74-paragraph account of Oakie's in-custody medical treatment squarely and publicly at issue in a lawsuit against several public officials, including the Sheriff of Marion County, Florida. See [Doc. 25, ¶¶ 32-106]. In doing so, she has waived Oakie's privacy interests in that regard and if there was any injury to Oakie's privacy by making that information public, she herself has already caused it. Further, Plaintiff has also already responded to the motion to dismiss, noted the attachment of Oakie's inmate medical documents, and, although she (incorrectly) argued that they are not central to her claims, she did not contest their reliability. See [Doc. 38, pp. 12-14]. Good cause to seal the item has not been shown.

## VI. Conclusion

For the foregoing, the Defendants respectfully request that the Court enter an order (1) denying Plaintiff's motion for entry of her proposed protective order; and (2) denying Plaintiff's motion to seal docket item [Doc. 31-1].

Respectfully submitted this 2nd day of November 2026.

/s/ Brandon W. White
William B. Armistead, Esq.
(FBN: 88535)
Brandon W. White, Esq.
(FBN: 84788)
warmistead@coppinsmonroe.com
bwhite@coppinsmonroe.com
kwillis@coppinsmonroe.com
sanders@coppinsmonroe.com

COPPINS MONROE, P.A.
2316 Killearn Center Blvd., Ste. 202
Tallahassee, FL 32309
Office: 850-422-2420 Fax: 850-422-2730

ATTORNEYS FOR DEFENDANTS BILLY WOODS, SHERIFF OF MARION COUNTY, FLORIDA, IN HIS OFFICIAL CAPACITY, CAPTAIN BRIAN SPIVEY, OFFICER N. CUSTODIO, DEPUTY GORDON, AND DEPUTY IOVINO

/s/ Cynthia Lynn
Howard L. Citron, Esq.
(FBN: 333300)
Cynthia Lynn, Esq.
(FBN: 1028133)
LACAVA JACOBSON
550 W. Cypress Creek Rd., Ste. 150
Ft. Lauderdale, FL 33309
954-205-0333
hlc.pleadings@lacavajacobson.com
Clynn@LaCavaJacobson.com

ATTORNEYS FOR DEFENDANTS HEART OF FLORIDA HEALTH CENTER, INC., DR. JOHN PEARSON, NURSE JOHN LITTLE, NURSE COLLEEN RUTLAND, NURSE SANDY GOMEZ, NURSE DORISVEL RAMOS,

ARNP DUANE CUNNINGHAM, NURSE LESLIE TYSON, AND NURSE ANDREA YOUNES

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Civil Procedure 5(b), this document is filed electronically, and service shall be through the Court's transmission facilities on all persons appearing before this Court.

**/s/ Brandon W. White**