**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

MARILYN OAKIE, as Personal Representative for the Estate of Jacob Oakie, deceased, on behalf of the Estate and Survivors,

Plaintiff,

v.

Case No. 5:26-cv-405-WFJ-PRL

BILLY WOODS, Sheriff of Marion County, Florida, *et al.*,

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO PARTIALLY STAY DISCOVERY**

Under Local Rule 3.01(c), Plaintiff Marilyn Oakie, as Personal Representative of the Estate of Jacob Oakie, files this response in opposition to Defendants' Joint Motion to Partially Stay Discovery, Doc. 43. Because Defendants fail to provide any justification or make any showing to satisfy their "heavy burden" to warrant staying discovery, the Motion should be denied.

## I. BACKGROUND

Jacob Oakie died on July 28, 2024, of meningitis while in custody at the Marion County Jail. *See generally* Doc. 25. His mother, as personal

representative of his estate, sued under 42 U.S.C. § 1983 and Florida law. *See id.* All Defendants have moved to dismiss. Docs. 29, 30.

The parties have begun discovery and filed a case management report following their Rule 26(f) and Local Rule 3.02 planning conference. Doc. 28. Per the parties' case management report, they asked the Court to permit discovery through October 22, 2027. *See id.* While the Court has not entered a scheduling order, discovery is nonetheless open.

On October 14, 2026, Plaintiff served requests for production on Sheriff Woods and Heart of Florida. Responses are not due until November 13, 2026. Defendants filed the Motion on November 3, 2026, ten days before that date and before serving a single objection to any request.

Defendants assert they do not seek a stay of all discovery. They concede that requests "directly pertain[ing]" to Mr. Oakie should go forward. Doc. 43 ¶¶ 4–5, 11. They seek to stay discovery that does not directly pertain to Mr. Oakie (i.e. *Monell* discovery), which they describe as five categories of requests: (a) housing, monitoring, and staffing records; (b) medical care of nonparties; (c) grievances, complaints, and lawsuits by nonparties; (d) contractual, budgetary, statistical, revenue,

personnel, corporate, tax, risk-management, and public-relations matters; and (e) policies, procedures, post orders, protocols, guidelines, and training. *Id.* ¶ 5. The stay would last until the Court resolves the motions to dismiss or, if "all or a portion of those motions fail," until "the close of pleadings in this case." *Id.* ¶ 10.

## LEGAL STANDARD

Defendants invoke Rule 26(c), which allows a protective order only "for good cause." Doc. 43 ¶ 7. The movant must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Metro. Life Ins. Co. v. Liebowitz*, 2021 WL 3520673, at *1 (M.D. Fla. July 2, 2021)).

While Defendants invoke this rule, the real crux of their Motion is that "the Court's resolution of the Defendants' motions to dismiss will be dispositive of the case. Even if not granted entirely, it is likely to significantly alter the parties' needs for discovery." Doc. 43 ¶ 9. In essence, Defendants argue that the Court should pause discovery on certain matters because they may not be relevant if the Court grants the motions to dismiss in whole or in part.

A "request to stay discovery pending a resolution of a motion is rarely appropriate unless resolution of the motion will dispose of the entire case." *Jones v. Thrive Senior Living, LLC*, 2021 WL 620964, at *1 (S.D. Ga. Feb. 17, 2021) (quoting *CSX Transp., Inc. v. United States*, 2014 WL 11429178, at *1 (S.D. Ga. May 30, 2014)); *McCrimmon v. Centurion of Fla., LLC*, 2020 WL 6287681, at *2 (M.D. Fla. Oct. 27, 2020) ("Absent a clear indication a case will be dismissed in its entirety, a motion to stay should be denied.") (citation omitted).[1] The Middle District's own discovery handbook says a motion to dismiss "[n]ormally . . . will not justify a unilateral motion to stay discovery," and that "[s]uch motions for stay are rarely granted." *Middle District Civil Discovery Handbook* (2021) § I(E)(4).

Thus, unless a motion is truly case dispositive, motions to stay are "generally disfavored, 'because when discovery is delayed or prolonged it can create case management problems which impede the Court's

[1] Courts in this Circuit have held that *Chudasama* and its progeny actually "stand for the narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount," not that discovery should be stayed any time there is a motion to dismiss. *Koock v. Sugar & Felsenthal, LLP*, 2009 WL 2579307, at *2 (M.D. Fla. Aug. 19, 2009) (quoting *In re Winn Dixie Stores, Inc. ERISA Litig.*, 2007 WL 1877887, at *1 (M.D. Fla. June 28, 2007)); *see also McCrimmon*, 2020 WL 6287681, at *1 (collecting cases) (denying health provider's motion to stay discovery in a lawsuit involving deliberate indifference under the Eighth Amendment).

responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'" *www.TrustScience.com Inc. v. Bloom Ltd.*, 2018 WL 8368844, at *2 (M.D. Fla. Oct. 11, 2018) (quoting *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988)).

## ARGUMENT

### I. Defendants Do Not Attempt to Show That Their Motions to Dismiss Are Clearly Meritorious and Truly Case Dispositive.

The threshold question on any request to stay discovery pending a motion to dismiss is whether the motion, on a "preliminary peek," "appears to be clearly meritorious and truly case dispositive." *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997). Defendants, however, not only fail to explain how their motions to dismiss are likely to be case dispositive but implicitly concede the opposite: they are only seeking to limit discovery to matters pertaining to Mr. Oakie, as opposed to halting discovery altogether. There is no just reason to delay the speedy and efficient determination of this action. *See, e.g.,* Fed. R. Civ. P. 1.

Defendants carry a heavy burden to demonstrate the need for a stay, *Feldman*, 176 F.R.D. at 652, which is "the exception, rather than the rule." *Jolly v. Hoegh Autoliners Shipping AS*, 2021 WL 1822758, at

*1–2 (M.D. Fla. Apr. 5, 2021) (denying motion to stay; requiring a "specific showing" of the "unusually prejudicial or burdensome circumstance which could warrant a stay") (emphasis in original); *see also Taylor v. Serv. Corp. Int'l*, 2020 WL 6118779, at *3 (S.D. Fla. Oct. 16, 2020) (finding the rule the Eleventh Circuit announced in *Chudasama* "particularly appropriate in large putative class action cases"). Their four-page, threadbare motion fails to satisfy this heavy burden.

That is, other than referencing that the motions to dismiss may alter the landscape of this case, Defendants provide no basis for the Court to measure whether their motions are "clearly meritorious and truly case dispositive." Indeed, the fact that Defendants are fine with Plaintiff pursuing some discovery, but not all, does not suggest that even they believe all the claims in this case will be dismissed. They acknowledge that their motions, "[e]ven if not granted entirely," would merely "alter the parties' needs for discovery." Doc. 43 ¶ 9. They ask for a stay that would run to "the close of pleadings" in the event "all or a portion of those motions fail." *Id.* ¶ 10. And they agree that discovery "directly pertain[ing]" to Mr. Oakie should go forward now. *Id.* ¶¶ 10–11. That position makes sense only if Defendants expect at least some of Plaintiff's

claims to survive; a defendant confident that its motions will end the case does not volunteer to begin producing merits discovery in its motion to stay.

**"Absent a clear indication a case will be dismissed in its entirety, a motion to stay should be denied."** *McCrimmon*, 2020 WL 6287681, at *1; *see also Jolly*, 2021 WL 1822758, at *1–2. Defendants cite no authority for the proposition that a possible narrowing of the claims in this case justifies any stay of discovery. Indeed, where at least some claims are likely to survive the motions to dismiss, their burden likely cannot be met. *Arenas v. Ga. Dep't of Corr.*, 2017 WL 1754770, at *3 (S.D. Ga. May 3, 2017) (denying stay where "at least one (and probably more)" claims appeared "more than likely to proceed" in a prison deliberate-indifference case). When courts examine this question, they look to whether the case is likely to end, not whether it might change shape. In their motion to stay, Defendants have not shown any "clear indication" that any one of Plaintiff's claims is sure to fail at the pleadings stage, much less that their motions to dismiss will be granted in their entirety.

The complexity and volume of issues subject to the motions to dismiss reduce the likelihood that this case will be entirely dismissed at

the initial pleadings stage. In *Aguirre-Jarquin*, the court declined to find that the pending motions to dismiss favored a stay because "Plaintiff's fifty-two-page complaint contains detailed factual allegations to support his claims, and Plaintiff's oppositions to the Motions to Dismiss are likewise lengthy and permeated with law contesting Defendants' assertions," so the court could not say that the case would be dismissed entirely. 2020 WL 13664124, at *2 (M.D. Fla. May 18, 2020). The court denied the stay. *Id.*

The same is true here. The briefing on the motions to dismiss is substantial: Plaintiff's Amended Complaint is 42 pages, Doc. 25, Defendants filed two motions totaling nearly 40 pages, Docs. 29, 30, and Plaintiff responded with more than 50 pages of opposition, for one of which the Court granted leave to exceed the page limit (over the County Defendants' objection). Docs. 37, 38, 40; *see* Doc. 36. That briefing joins a host of contested issues, including (1) whether Mr. Oakie's jail medical file may be considered on a motion to dismiss, Doc. 30 at 5–7; Doc. 38 at 12–14; (2) whether each of the nurses, the nurse practitioner, and the deputies was deliberately indifferent to Mr. Oakie's serious medical need, Doc. 29 at 7–9; Doc. 30 at 14–20; Doc. 37 at 9–14; Doc. 38 at 14–18; (3)

whether the deputies are entitled to qualified immunity, Doc. 30 at 24–25; Doc. 38 at 17–18; (4) whether Plaintiff has pleaded a custom supporting *Monell* and supervisory liability, including a policy of continuing to contract with a medical provider known to deliver inadequate care, Doc. 29 at 9–10; Doc. 30 at 20–23; Doc. 37 at 14–21; Doc. 38 at 18–28; and (5) whether Plaintiff's state-law claim is subject to Chapter 766's presuit requirements or barred by sovereign immunity, Doc. 30 at 24–26; Doc. 38 at 29–31. These are not issues the Court can resolve summarily, and several—such as the incorporation-by-reference dispute and whether the care Mr. Oakie received was "so cursory as to amount to no treatment at all"—turn on facts ill-suited to resolution on the pleadings. *See* Doc. 37 at 10 (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). The Amended Complaint is also detailed; it is 42 pages and Defendants themselves describe its account of Mr. Oakie's final days as a "painstaking recitation." Doc. 29 at 10. Defendants' motion to stay, by contrast, devotes two sentences to the merits of their motions to dismiss. Doc. 43 ¶ 9. As in *Aguirre-Jarquin*, the Court cannot say on this record that the case will be dismissed in its entirety.

Finally, the mere fact that some Defendants have raised qualified immunity is "not enough to warrant a stay." *Aguirre*, 2020 WL 13664124, at *2. Only the individual-capacity County Defendants raise the qualified immunity defense (in a two-paragraph argument), Doc. 30 at 24, and qualified immunity shields only **individual** officials from damages claims. It has no bearing on Plaintiff's claims against Sheriff Woods in his official capacity or against Heart of Florida, a private corporation—the only two Defendants to whom the requests at issue were directed. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *Richardson v. McKnight*, 521 U.S. 399, 412 (1997); Doc. 43 ¶ 3. In short, the claims *not* subject to qualified immunity are Plaintiff's *Monell* claims, so even if some Defendants were granted qualified immunity, her *Monell* claims would still proceed. Yet, Defendants motion only seeks to halt *Monell* discovery. A stay pending a qualified immunity determination is not appropriate when qualified immunity has no bearing on the claims and discovery at issue.

## II. A Stay Would Prejudice Plaintiff.

Here, Defendants have shown no realistic possibility that the motions will eliminate the need for this discovery, and the harm from

delay is real. Even setting aside the merits of the motions to dismiss, the Motion fails to show any good cause for a stay or any harm in allowing Plaintiff to engage in discovery on all her claims. Without support, Defendants claim that the discovery will take significant resources and involve confidential matters. Taking the second point first, that is a non-issue, particularly where the Court has granted a motion for protective order, and the parties are actively conferring on the terms. See Doc. 44. As to the first point, the inherent burdens of discovery do not justify a stay. *See Kattell v. Brenntag Mid-S., Inc.*, 2019 WL 1676201, at *3 (M.D. Fla. Apr. 17, 2019) ("the normal costs and burdens that come with discovery" do not make a case "unusually burdensome"); *Jolly*, 2021 WL 1822758, at *1–2. Defendants' Motion is replete with the kind of "stereotyped and conclusory" statements that Rule 26(c) does not accept. *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011). In contrast, staying the non-Oakie discovery would significantly prejudice Plaintiff. A *Monell* claim cannot be proved by Mr. Oakie's medical chart alone. It requires proof that an official policy, unofficial custom, or widespread practice was undertaken with deliberate indifference to its known or obvious consequences, and that the policy or custom directly

caused the constitutional violation. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) (requiring "rigorous standards of culpability and causation"); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (proving a custom requires a "persistent and wide-spread practice"). That proof necessarily lies in the categories Defendants want to defer: other detainee medical incidents, deaths, grievances, complaints, lawsuits, staffing records, contract materials, hospital-transfer data, policies, procedures, training, audits, and communications reflecting notice to the policymakers.

Defendants' own motions to dismiss make the point. They fault Plaintiff for not identifying the other incidents underlying her custom allegations with greater specificity as to time and events. Doc. 30 at 22–23 & n.5; Doc. 29 at 9–10. But records of those incidents are in Defendants' possession, and Defendants now ask to block Plaintiff from beginning discovery into those records until after the Court resolves the motions premised on their supposed absence. *See* Doc. 37 at 19; Doc. 38 at 22. In other words, Defendants argue that Plaintiff's *Monell* allegations are not specific enough, while simultaneously resisting the discovery that would allow Plaintiff to obtain the evidence necessary to

prove and, if necessary, further substantiate those allegations. Defendants' position creates a Catch-22: they fault Plaintiff—a mother whose son died of a treatable illness in their custody—for not pleading more detailed *Monell* evidence, while asking the Court to deny, or at least significantly delay, access to the discovery needed to obtain it.

*Monell* requires Plaintiff to connect those incidents and records to MCJ's alleged customs, including delayed sick call, conservative treatment to avoid hospital transfers, staffing shortages, inadequate monitoring of HOF, and notice from Mary Coy and others. *See* Docs. 37, 38. Proving a policy, custom, or widespread practice requires substantial discovery and follow-up: document productions, privilege and confidentiality conferrals, depositions of policymakers and former staff, additional written discovery prompted by what the records reveal, third-party subpoenas, and expert analysis. Delaying that work does not merely create generic prejudice. It delays discovery on the very proof Defendants say Plaintiff must have, while memories of other detainee incidents fade, staff with knowledge of informal practices leave, retention periods continue to run, electronic data and video become harder to reconstruct, and current policies and staffing arrangements change. With

the parties' proposed discovery deadline of October 22, 2027, Doc. 28, pushing *Monell* discovery to an unknown future date compresses the time left to do the work required to prove the claims and is at odds with Rule 1's mandate to secure the just, speedy, and inexpensive determination of the action. Fed. R. Civ. P. 1.

Not only that, but Defendants must continue complying with the discovery rules and respond to Plaintiff's requests unless ordered otherwise. *Wells Fargo Bank, N.A. v. Hazzan*, 2012 WL 13014695, at *1 (S.D. Fla. July 17, 2012) ("[A] party may not stop complying with its discovery obligations when it files a motion to stay.") (quoting *Romacorp, Inc. v. Prescient, Inc.*, 2011 WL 2312563 (S.D. Fla. June 8, 2011) (citing *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989))).

## CONCLUSION

Defendants have not met their heavy burden to demonstrate the appropriateness of a stay of discovery, even on a partial basis, or that they would be prejudiced by engaging in the normal course of discovery. For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Joint Motion to Partially Stay Discovery, Doc. 43, and direct

Defendants to respond to Plaintiff's October 14, 2026, requests for production by November 13, 2026.

Dated: November 6, 2026

Respectfully submitted,

Respectfully submitted,
/s/ Sam Harton

ROMANUCCI & BLANDIN
Sam Harton*
321 N. Clark St. STE 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
sharton@rblaw.net
*Pro hac vice

James M. Slater (FBN 111779)
SLATER LEGAL, PLLC
2296 Henderson Mill Rd NE #116
Atlanta, Georgia 30345
Tel. (404) 458-7283
james@slater.legal

*Attorneys for Plaintiff*